**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TONY PAYTON, JR.,<br>Plaintiff, | : | 3:24-cv-1922 (MPS) |
| | : | |
| v. | : | |
| | : | |
| OFFICER ZEIMET,<br>Defendant. | : | |

**<u>MEMORANDUM OF DECISION</u>**
**<u>ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

The plaintiff, Tony Payton, Jr., is a sentenced inmate incarcerated at Cheshire Correctional Institution in the custody of the Connecticut Department of Correction.[1] He filed an amended complaint under 42 U.S.C. § 1983 naming Correctional Officer Zeimet, an employee at Corrigan Correctional Center ("Corrigan"), as the sole defendant. Am. Compl., ECF No. 17. Payton alleged in his amended complaint that while he was holding a cup of hot water, Officer Zeimet purposefully squeezed his hands aggressively, which caused the hot water to burn his hands. *Id*. at 5. The Court permitted the plaintiff to pursue damages from Office Zeimet on an Eighth Amendment excessive force claim. *See* IRO Am. Compl. at 5.

Officer Zeimet has now moved for summary judgment, maintaining that Payton did not exhaust his administrative remedies, that Payton's Eighth Amendment claim fails on the merits, and that he is entitled to qualified immunity. *See* Def.'s Mot. for Summ. J. ("MSJ"), ECF No. 34 at 1. Officer Zeimet has submitted a memorandum of law in support of his summary judgment motion, (ECF No. 34-1), a Local Rule 56(a)(1) statement of material facts, (ECF No. 34-2), and a

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut Department of Correction ("DOC") website shows that Plaintiff's latest admission date to the DOC was August 30, 2021, and he was sentenced on May 16, 2023. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=335383 (last visited August 7, 2026).

supporting declaration and documentary evidence, (ECF Nos. 34-4 to 34-11, 41). Payton has filed a response in opposition.[2] (ECF No. 37).

For the reasons set forth below, the defendant's motion for summary judgment is granted.

## I. FACTS[3]

At all relevant times, Payton was an inmate in Fox pod at Corrigan. Def.'s L.R. 56(a)(1) ("Def.'s L.R."), ECF No. 34-2 ¶ 1; ECF No. 34-5 at 15. On September 26, 2023, "[a] code had been called," and inmates were told to return to their cells. ECF No. 34-2 ¶ 3; *see also* Incident Report, Pl.'s Ex. 2B, ECF No. 37 at 80; ECF No. 34-5 at 14. Correctional officers at Corrigan call the codes aloud directly to the inmates and not over the loudspeaker. Def.'s Ex. B, ECF No. 34-5 at 14.[4] When the code was called that day, Payton was in the process of filling up his cup with hot water from a "hot pot." *Id*. at 15; Def.'s L.R., ECF No. 34-2 ¶ 8.[5]

---

[2] Payton's opposition is comprised of a Local Rule 56(a)(2) statement of material facts, (ECF No. 37 at 5-11), additional facts, (ECF No. 37 at 12-14), as well as declarations and multiple exhibits, (ECF No. 37 at 15-27, 65-88; ECF No. 37-1).

[3] Local Rule 56(a)(1) requires a party moving for summary judgment to file "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)(2). Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(3). Officer Zeimet informed Payton of this requirement. *See* Notice to Pro Se Litigant, ECF No. 34-3.

The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits. Where the facts are not disputed, the Court cites only Officer Zeimet's Local Rule 56(a)1 statement. If the facts are disputed or require a more detailed explanation, the Court will primarily cite Payton's deposition transcript and the documentary evidence. The Court will cite the exhibits provided by Officer Zeimet, unless the referenced exhibit was solely provided by Payton. To the extent that Payton has not refuted Officer Zeimet's Local Rule 56(a) Statement with specific citations of admissible evidence, Officer Zeimet's facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1. For citations of exhibits, the Court cites the page numbers assigned by the CM/ECF system as reflected in the ECF header and not the page numbers marked on the documents themselves.

[4] The Court may rely on Payton's deposition testimony. *See Conquistador v. Adamaitis*, No. 3:19-CV-430 (KAD), 2021 WL 810361, at *8 (D. Conn. Mar. 3, 2021) ("A party is bound by the facts he testifies to in a deposition and cannot defeat a motion for summary judgment by relying on a different version of events."); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

[5] A hot pot is a water dispenser that inmates can use to get hot water. Def.'s L.R., ECF No. 34-2 ¶ 8.

Surveillance video of the Fox pod unit depicts Payton and another inmate standing next to each other at the "hot pot." Def.'s Video Ex. A, ECF No. 34-4 at 00:16. Officer Zeimet approached the two inmates from behind, and as soon as Officer Zeimet approached, the other inmate left so that only Payton remained at the hot pot. *Id*. at 00:16-00:20. Payton submits that while Officer Zeimet was approaching him, he was "just screaming and yelling[,]" . . . pretty much just lock up." ECF No. 34-5 at 15. Officer Zeimet submits that he ordered Payton to stop filling up his cup and to return to his cell, but Payton refused his orders and became confrontational. Def.'s L.R., ECF No. 34-2 ¶¶ 11, 14-15; ECF No. 34-6 ¶ 11. Officer Zeimet was apprehensive that Payton was going to throw hot water on him. ECF No. 34-2 ¶ 15.

Surveillance video shows that after Officer Zeimet stood next to Payton at the hot pot, Officer Zeimet and Payton exchanged words for approximately ten seconds. Def.'s Video Ex. A, ECF No. 34-4 at 00:18-00:28. During this ten seconds, Officer Zeimet appeared to make several attempts to grab Payton's cup to no avail. *Id*. Then, and within a matter of approximately three seconds, Officer Zeimet attempted to grab Payton's cup again, but Payton pulled away with the cup in his hand. *Id*. at 00:28-00:30. Officer Zeimet attests that he "reached out and tried to take Mr. Payton's cup tipping out the water into the hot pot," and that "[t]here was only a small amount of water in the cup and I wanted to dump it before he could get more water." ECF No. 34-6 ¶¶ 12-13. Payton testified at his deposition that the water splashed all over his left leg and left hand, and that his hands and legs were burning, but he had no marks on his body. ECF No. 34-5 at 12, 21-22.

After the incident, Payton and Officer Zeimet continued to exchange words, and Payton attempted to return to the hotpot, but Officer Zeimet stood in front of the hotpot and blocked Payton from approaching. Def.'s Video Ex. A, ECF No. 34-4 at 00:37-44. Payton then walked away from

the hotpot, and Officer Zeimet and Payton continued to exchange words, *id*. at 00:44-00:52, until Payton left and returned to his cell. ECF No. 34-5 at 21.

After Payton was back in his cell, the door popped open for Payton's cellmate, and Payton exited his cell and "came out angrily" and "yelled at [Officer] Zeimet a few more times." *Id*. at 13. Payton then went back into his cell and shut the door, and Officer Zeimet called a code. *Id*. Payton was sent to the restricted housing unit ("RHU") for administrative detention that same day. *Id*.; *see also* RHU Order, Pl.'s Ex. 7G, ECF No. 37-1 at 13. Payton testified that he did not seek any medical treatment for the hot water burns, but as protocol, when an inmate is sent to RHU they are automatically seen by medical staff. ECF No. 34-5 at 22.

The next day, on September 27, 2023, Payton completed an Inmate Interview Statement, memorializing his account of the incident with Officer Zeimet. Inmate Statement, Pl.'s Ex. 3C, ECF No. 37 at 84. Approximately two weeks later, on October 12, 2023, Payton filed a Level 1 Grievance concerning the September 26, 2023 incident with Officer Zeimet. Grievance, Def.'s Ex. E, 34-8 at 3-4. In the Grievance, Payton described the incident with Officer Zeimet. *Id* at 3. Payton also alleged that Officer Zeimet gave false information in his disciplinary ticket, and Payton stated that on October 3, 2023, Officer Zeimet worked in the same housing unit as him and started to retaliate against him by hindering his tierman job and delaying his attendance at his school program. *Id*. at 4. Notably, Payton also wrote, "I already verbally spoke with Lt. St. Jean about the assault and gave a statement[,] which is why there is no request form attached." *Id*. at 4.

On October 26, 2023, the Level 1 Grievance was rejected by Acting Warden Oles ("Warden Oles"), who wrote, "Per A.D. 9.6; An inmate must attempt to seek informal resolution through the inmate request system before filing a grievance." *Id*. at 3. Warden Oles also wrote, "Write to your Unit Manager on a CN9601, Inmate Request Form, and submit the completed form

in the U.S. Mail Box located in the dayroom. Be advised, a response to an Inmate Request Form shall be made within 15 business days from receipt of the written request." *Id*. Warden Oles checked the box stating, "This decision is not subject to appeal." *Id*.

Over nine months later, on July 30, 2024, Payton submitted an inmate request regarding the incident with Officer Zeimet. Inmate Request, Pl.'s Ex. 10J, ECF No. 37-1 at 20. There are no records of any other grievances filed by Payton. *See* Grievance Log, Def.'s Ex. G, ECF No. 34-10 at 2.

**II. LEGAL STANDARD**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III. DISCUSSION

Officer Zeimet moves for summary judgment on the grounds that Payton failed to exhaust his administrative remedies before filing his complaint, that Payton's claim fails on the merits, and that he is entitled to qualified immunity. *See* Def.'s MSJ, ECF No. 34. Because I agree that Payton failed to exhaust his administrative remedies, I GRANT Officer Zeimet's motion.

### A. The Prison Litigation Reform Act ("PLRA")

The PLRA requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also*

*Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

An inmate's failure to exhaust administrative remedies is excusable only if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The

Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. *See Jones*, 549 U.S. at 216. Thus, the defendant bears the burden of proof. *See Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Once the defendant establishes that administrative remedies were not exhausted before the inmate commenced the action, a plaintiff must present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See id.*

**B. Administrative Directive 9.6**

Payton's exhaustion of his claim pertaining to the alleged misconduct by Officer Zeimet is governed by the current version of the DOC's Administrative Directive 9.6 ("A.D. 9.6"), which was in effect as of April 30, 2021. *See* A.D. 9.6, Def.'s Ex. D, 34-7. Administrative Directive 9.6 requires an inmate to "attempt to seek informal resolution prior to filing an inmate grievance." A.D. 9.6 § (6)(a)(i)(1).

The inmate may first attempt to verbally resolve the issue with an appropriate staff member or supervisor. *Id*. § (6)(a)(i)(2). If the verbal communication does not resolve the issue, or if the inmate chooses not to first resolve the issue verbally, the inmate must submit a written request on a CN 9601, Inmate Request Form, to the appropriate staff member. *Id*. § (6)(a)(i)(2)(a), (3). The written form must "clearly state the problem and the action requested to remedy the issue." *Id*. § (6)(a)(i)(4)(a). The completed CN 9601, Inmate Request Form, must be addressed to the appropriate staff member and deposited in the appropriate collection box. *Id*. § (6)(a)(i)(5).

The Unit Administrator must ensure that Inmate Request Forms are collected and returned in a timely manner, and Inmate Request Forms must be available in all housing units. *Id*. § (6)(a)(i)(6), (7). A response to the inmate request form must be made within fifteen business days of receipt of the written request. *Id*. § (6)(a)(i)(8).

If an inmate is not satisfied with the informal resolution offered, the inmate must file a Level 1 grievance and attach the CN 9601, Inmate Request Form, containing the appropriate staff member's response to the grievance form. *Id*. § (6)(a)(ii)(1), (2). If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate must include an explanation indicating why the CN 9601, Inmate Request Form, was not attached to the Level 1 grievance form. *Id*. § (6)(a)(ii)(2)(a). The inmate must include the name of the staff member to whom the informal resolution was addressed and the date of the attempt. *Id*.

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance. *Id*. § (6)(a)(ii)(4). The Unit Administrator must respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *Id*. § (6)(b)(i)(3). The grievance can be returned without disposition, rejected (if the administrative remedy fails to satisfy the procedural requirements of the requested remedy), denied, compromised, upheld, or withdrawn. *Id*. §§ (5)(n)(i)-(ii); (6)(b)(i)(2)(a)(1)-(2); (3)(h).

If the Level 1 grievance is found not to be in compliance, then the Level 1 grievance must be rejected and the inmate must be notified. *Id*. § (6)(b)(i)(2)(a)(i). If the failure to meet the procedural requirement can be corrected, then the inmate has five calendar days to correct the defects and resubmit the Level 1 grievance. *Id*. § (6)(b)(i)(2)(a)(i)(1). If the resubmitted Level 1

grievance does not correct the defect, then the grievance will be rejected and will not be subject to further appeal. *Id*. § (6)(b)(i)(2)(a)(i)(2).

The inmate must appeal the Unit Administrator's disposition of the Level 1 grievance by filing a Level 2 grievance within five calendar days of the inmate's receipt of the decision on the Level 1 grievance. *See id*. § (6)(b)(ii)(1). Likewise, an inmate must appeal the Unit Administrator's failure to dispose of the grievance in a timely manner by filing a Level 2 grievance within sixty-five days of the date the Level 1 grievance was filed by the inmate. *Id*. § (6)(b)(ii)(2). Level 3 Grievance appeals are restricted to challenges to department policy, challenges to the integrity of the grievance procedure, and Level 2 Grievance appeals to which there has been no timely response by the District Administrator. *See id*. § (6)(b)(iii)(1).

### C. Payton's Administrative Remedies

Officer Zeimet maintains that Payton failed to exhaust his administrative remedies in accordance with A.D. 9.6. Def.'s MSJ Mem., ECF No. 34-1 at 8-11. He provides the sworn declaration of Nicholas Jacaruso, the Administrative Remedies Coordinator at Corrigan. Jacaruso Decl., Def.'s Ex. F, ECF No. 34-9 ¶ 3. In Jacaruso's Declaration, he attests that he reviewed the grievance documents at Corrigan for any administrative remedies filed by Payton between September 20, 2023, and December 26, 2023, and only the October 12, 2023 Level 1 Grievance concerning the incident with Officer Payton was found. *Id*. ¶¶ 15-16. Jacaruso also confirmed that the October 12, 2023 Level 1 Grievance was rejected because there was no indication that Payton had attempted an informal resolution before filing his grievance. *Id*. ¶ 20. Officer Jacaruso further attests that if Payton had refiled a grievance after his October 12, 2023 Level 1 Grievance had been rejected, the new grievance would have been entered into the grievance log. *Id*. ¶ 22. With this evidence, Officer Zeimet has shown that Payton failed to exhaust his administrative remedies for

his Eighth Amendment excessive force claim and the burden shifts to Payton to rebut that showing. *See Hubbs*, 788 F.3d at 59.

Here, it appears as if Payton is attempting to argue two divergent scenarios. First, in Payton's declaration, he attests that he "started [his] complaint by seeking a verbal and informal resolution through the inmate request system[,] [but] [a]fter [he] got no response from the CN 9601 form within a few weeks, [he] then spoke with Lt. St. Jean about the assault and gave a written statement." Pl. Damages Decl., ECF No. 37 at 24. With this statement, Payton seems to claim that he submitted a written CN 9601 inmate request form, but did not attach the request form to his grievance because he did not receive a response.

Conversely, Payton refers to his October 12, 2023 Level 1 Grievance, and he points out where he stated that he "'already verbally and informally gave Lt. St. Jean a statement about the assault[,]" and he asserts that this is "why there was not another CN 9601 form attached to the grievance." Pl. Damages Decl., ECF No. 37 at 24. With this statement, Payton appears to claim that he did not attach a CN 9601 written inmate request form to his grievance because he wrote an inmate interview statement in lieu of submitting a CN 9601 written inmate request.

To the extent Payton claims that he filed a CN 9601 written inmate request form between September 26, 2023, the date of the incident, and October 12, 2023, the date he filed his grievance, this claim is belied by the evidentiary record, i.e., Payton's deposition transcript and the contents of his Level 1 Grievance.

First, it is well-established that Payton may not submit a declaration contradicting his prior sworn deposition testimony. *See Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220-CV, 2024 WL 3264125, at *3 (2d Cir. July 2, 2024) (summary order) (noting that new allegations in plaintiff's affidavit "which are not supported by any other evidence of record, and which contradict

his deposition testimony, do not create a genuine issue of material fact precluding summary judgment") (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). At Payton's deposition, he testified that he did not remember if he filled out a CN 9601 inmate request form between the date of the incident and the date he filed his grievance on October 12, 2023. *See* ECF No. 34-5 at 24. Payton cannot create a triable issue of fact by now claiming that he did in fact file a CN 9601 written inmate request form before he filed his Level 1 Grievance, and renouncing his deposition testimony in which he attested he could not remember if he did. *See Collins v. Feder*, No. 3:23-CV-71 (KAD), 2024 WL 5058435, at *6 (D. Conn. Dec. 10, 2024) (plaintiff, even as a *pro se* litigant, could not "recast the circumstances of his deposition to defeat [the] [d]efendants' motions for summary judgment").

Second, in Payton's Level 1 Grievance, he stated that he "already verbally spoke with Lt. St. Jean about the assault and gave a statement[,] which is why there [was] no request form attached." Grievance, Def.'s Ex. E, 34-8 at 4. Payton's statement in his Level 1 Grievance, i.e., that he did not submit an inmate request because he had "already" given a "statement," further undermines his attestation that he filed a written CN 9601 inmate request prior to filing his grievance.[6]

Finally, Payton testified at his deposition that he did not file any other grievances after his Level 1 Grievance was rejected. ECF No. 34-5 at 28. Thus, even if Payton had attempted informal resolution under A.D. 9.6(6)(a)(i), which the record and his deposition testimony refute, Payton did not attempt to refile a procedurally compliant Level 1 grievance under A.D. 9.6(6)(a)(ii).

[6] Payton's claim that he submitted an informal inmate request, received no response for a few weeks, and then submitted a written statement to Lt. St. Jean, *see* Pl. Damages Decl., ECF No. 37 at 24, is further diminished by the timeline of events as set forth in the documentary evidence. Assuming Payton is referring to his written inmate interview statement, Payton could not have submitted a CN 9601 informal inmate request and then waited a few weeks to submit a written inmate interview statement to Lt. St. Jean, because his written inmate interview statement was completed on September 27, 2023, the day after the incident with Officer Zeimet. *See* Inmate Statement, Pl.'s Ex. 3C, ECF No. 37 at 84.

"[P]roper exhaustion of administrative remedies means using all steps that the agency holds out, and doing so *properly* so that the agency can address the issues on the merits, in the first instance." *Woodford*, 548 U.S. at 90 (cleaned up) (emphasis in original) (citation omitted); *see also Urbanski v. Dep't of Correction*, No. 18 Civ. 1323 (VLB), 2019 WL 6683047, at *6 (D. Conn. Dec. 5, 2019) (noting that "[t]o properly exhaust a § 1983 claim in Connecticut, a prisoner must comply with *all* steps set forth in Directive 9.6, including deadlines and utilization of each step of the administrative appeal process"). Thus, Payton has failed to show that he properly followed the steps necessary to exhaust his administrative remedies as set forth in A.D. 9.6.

**D. Administrative Remedies Were Available**

Payton has failed to show that administrative remedies were unavailable. Payton argues that he could not have appealed his rejected Level 1 Grievance any further because the box stating, "This decision is not subject to further appeal" had been checked, and so, he claims that he exhausted his administrative remedies at the highest level, or alternatively, that he was unable to exhaust his administrative remedies. Pl.'s Damages Decl., Ex. 16P, ECF No. 37 at 25. Read liberally, this argument suggests that Payton's administrative remedy procedures were unavailable to him because they "operated as a simple dead end." *See Ross*, 578 U.S. at 643.

The Supreme Court in *Ross* provides further guidance as to what a "dead end" to the grievance process means. *Id*. at 643. If the "relevant administrative procedure lacks authority to provide any relief, the inmate has nothing to exhaust." *Id*. (citation modified and omitted). The same is true if an administrative official has authority, but declines to ever exercise it. *Id*. Thus, if no such potential to exhaust exists, then "the inmate has no obligation to exhaust the remedy." *Id*.

Here, there is no evidence in the record to suggest that Payton's grievance procedures operated as "a simple dead end." In response to Payton's Level 1 Grievance, Warden Oles advised

Payton that he had rejected Payton's Level 1 Grievance because Payton had not sought informal resolution through the inmate request system as required by A.D. 9.6. Grievance, Def.'s Ex. E, 34-8 at 3-4. Warden Oles also provided Payton with instructions on how to comply with Administrative Directive 9.6, namely, by submitting a written Inmate Request form to his Unit Manager and placing the completed form in the U.S. Mail Box located in the unit dayroom. *Id*. at 3. Payton could have followed these instructions and completed the steps to submit a written CN 9601 written inmate request and then resubmitted his Level 1 Grievance but he did not. *See Sanchez v. Bell*, No. 3:22-CV-1087 (SVN), 2024 WL 525594, at *8 (D. Conn. Feb. 9, 2024), *appeal dismissed,* No. 2024-1518, 2024 WL 2270152 (Fed. Cir. May 20, 2024) (finding the plaintiff's "grievances were properly denied for failure to attach a CN 9601 form with a response from an appropriate staff member" and the warden's rejection of the grievances on procedural grounds did "not support the inference that the grievance acted as a dead-end").

There is also no inclination that Payton's administrative procedures were "so opaque that [they] bec[ame], practically speaking, incapable of use." *See Ross*, 578 U.S. at 643. In fact, the Second Circuit has recognized that while Connecticut DOC Administrative Directives are "rigorous in some respects," they are "not so opaque as to be unavailable[.]" *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (concluding Administrative Directive 9.6 . . . "is not so opaque as to be unavailable, plainly stating that '[i]f the verbal option does not resolve the issue, the inmate shall submit a written request via CN 9601, Inmate Request Form.'") (quoting AD 9.6 § 6.A[,]").[7]

Even assuming Payton had submitted a CN 9601 inmate request form prior to filing his Level 1 Grievance but received no response, Payton could have so informed the Unit Administrator

[7] In *Riles*, the Second Circuit quoted the language from the prior version of A.D. 9.6, but the current version of A.D. 9.6 contains the same language.

in his October 12, 2023 Level 1 Grievance, or Payton could have resubmitted his grievance to inform the Unit Administrator that he had submitted an inmate request but received no response. But he did not. *See Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *10 (D. Conn. Jan. 5, 2023) (relying on *Taylor* to conclude that "the administrative remedies under A.D. 9.6 were not unavailable to plaintiff merely 'because prison officials did not respond to his informal request and grievance."); *Reberio v. Guadarrama*, No. 3:23-CV-238 (VAB), 2026 WL 622742, at *10 (D. Conn. Jan. 30, 2026) (concluding that "prison staff's alleged lack of response to [the plaintiff's] attempts at informal resolution [did] not make the administrative process unavailable").

Finally, Payton has not argued, nor is there any evidence to show that "prison administrators thwarted [him] from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *See Ross*, 578 U.S. at 644. Because Payton did not exhaust his administrative remedies, and has not shown that his administrative remedies were unavailable to him, summary judgment must enter in favor of Officer Zeimet, *see Riles*, 656 F. App'x at 579, and the Court need not reach the merits of Payton's Eighth Amendment excessive force claim. *See Santo v. Reis*, No. 3:22-CV-1484 (VDO), 2024 WL 4135797, at *6 (D. Conn. Sept. 10, 2024) (declining to reach the merits of the plaintiff's claim or address qualified immunity after finding the plaintiff had failed to exhaust his administrative remedies).

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [ECF No. 34] is GRANTED. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 31st day of August 2026, at Hartford, Connecticut.

____/s/______________
Michael P. Shea
Chief United States District Judge